United States District Court
Southern District of Texas
**ENTERED**
August 04, 2017
David J. Bradley, Clerk

| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

Bret Bachert, §
§
       Plaintiff, §
§
versus §    Civil Action H-15-3220
§
Remington Arms Company, LLC, §
§
       Defendant. §

## Opinion on Summary Judgment

1. *Introduction.*

   A hunter sues the manufacturer of his rifle, saying that his injuries in a hunting accident are from a manufacturing defect, lack of a warning, or both. He will take nothing.

2. *Background.*

   Bret Bachert has hunted and handled firearms his whole life. He has had extensive firearm safety instruction; in addition to being taught by his father and uncle, he has completed the Michigan hunter's education course and a concealed handgun carry course. He owns several guns and professes a thorough knowledge and experience with them. Bachert bought his Remington Model 700 rifle in September of 2013. From September into early November, Bachert had fired eight rounds from this gun.

   On November 4th, Bachert was hunting with it on an exotic-game ranch near Bend, Texas. The rifle has a three-round magazine. Bachert was in a blind when he shot an impala with three rounds. He engaged his rifle's safety when he climbed out of the blind. Bachert then put the rifle in the backseat of his truck and drove to get Billy Wiley, a ranch hand, to help him collect the kill.

   On returning, Bachert retrieved the rifle from the backseat to use as a prop in a photograph with the impala. Inexplicitly, he reloaded the rifle with three rounds and laid it across the impala's body. He positioned himself on one knee behind the Impala with the muzzle pointed towards his left leg. When Bachert pulled the impala's head up by the antlers, the rifle fired, sending the bullet through his leg below the knee.

3. *Posture.*

Bachert claims that the rifle is defective because of an excessive amount of bonding agent placed in the rifle's trigger mechanism. Because of this, the rifle would fire without pulling the trigger while the safety was in the off position.

Bachert also says that Remington failed to warn him of the defect and was negligent in its manufacture.

In 2015, Bachert sued Remington for products liability in Illinois. Remington removed the case to the United States District Court for the Northern District of Illinois. Remington deposed Bachert and had technicians test the rifle. Bachert dismissed that suit, and filed this suit one month later.

4. *Products Liability.*

Bachert must show that (a) the rifle was defective when it left the hands of Remmington and (b) the defect caused the injury.[1] Bachert says the excess bonding agent in the rifle's trigger mechanism rendered it unreasonably dangerous.

Bachert told the officer that the safety was on when the gun fired. Tests of the rifle after the accident showed that the trigger could not be pulled when the safety was on. The argument that the excess bonding agent caused a defect in the gun is not supported by the record.

A product is unreasonably dangerous only if it is defective. Bachert has not shown that a manufacturing defect injured him, nor has he shown that the rifle was defective at any other time. A rifle that fires only when the trigger is pulled is neither defective nor unreasonably dangerous.

Bachert's injury was produced by a gun shot resulting from the trigger's being pulled; not excess bonding agent in the trigger.

5. *Failure to Warn.*

Bachert claims that Remington did not warn him about the defective rifle. Remington owes no duty to Bachert if the risk associated with buying and using the rifle is common knowledge.[2] The hazards that are inherent to a rifle are patent. A rifle can cause serious — if not fatal — harm.

---

[1] Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).

[2] American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 426 (Tex. 1997).

Bachert admits that he has handled firearms since he was a child. He has taken a hunter's safety course and has a concealed-carry license. He has far more than common knowledge of the risks associated with rifles.

Bachert bought the rifle so that he could fire it. He loaded the gun with cartridges, laid it on the impala, pointed the gun towards his leg, and moved the impala's head. He now tries to say that the problem came from the manufacturer. No one can precisely describe the mechanism that caused the firing, but that does not make the firing Remington's fault.

It is Bachert's responsibility to provide evidence from which a jury could reasonably determine the gun was defective. He has nothing.

6.  *Affidavits.*

Bachert cannot defeat a motion for judgment with affidavits that contradict prior testimony with no change in the physical evidence.

Bachert's complaint and deposition from the case in Illinois say that that the rifle's safety was on at the time of the accident. More than two years after the accident and in response to Remington's motion for judgment, Bachert submitted a new affidavit directly contradicting his deposition testimony; he now claims that the safety was off. Bachert gives no explanation for his change in testimony other than saying he was mistaken at the time of his deposition. He waited two years to "correct" his testimony. He may not. He offers no justification for his revelation — the only thing that changed was his need to "fix" his recollection to fit his lawyer's extraneously derived theory.

After the accident, Wiley told officers that Bachert thought the impala's horn hit the trigger. He also said that he had to suppress rounds to keep an empty chamber to dry fire. Bachert now offers an affidavit of Wiley — executed more than two years after the accident — that directly contradicts the statements Wiley made to officers on the morning of the accident. He now claims that the horns of the impala never touched the rifle and that when he picked it up, the safety was in the off position. This casual approach to testimony is reprehensible and will not stand.

Bachert tries to denounce his prior testimony and Wiley's statement by submitting affidavits with different facts. The affidavits are an attempt to make the facts fit his new theory of liability. The court will disregard them.

7.  *Conclusion.*

Remington is not liable to Bachert. The rifle functioned normally when it was sighted and fired at the impala. Testimony the day of to the officer was that the safety

was off and the rifle was loaded. What hit the trigger is unexplained — and unexplainable. Bachert has the responsibility to prove his case, not make up the facts as he goes along.

    Bret Bachert will take nothing from Remington Arms Company, LLC.

Signed on August 4, 2017, at Houston, Texas.

                                          Lynn N. Hughes
                                  United States District Judge